**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3969
_____

ANNA ACKAWAY,
                                                Appellant

v.

AETNA LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-01300)
District Judge:  Honorable Edward G. Smith
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2020

Before:  AMBRO, GREENAWAY, JR. and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed February 18, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellant Anna Ackaway appeals the District Court's order denying her motion for summary judgment and granting summary judgment to Aetna Life Insurance Company on her claims, asserted under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, that Aetna wrongfully denied her applications for disability benefits. For the reasons detailed below, we will affirm the District Court's judgment.

At the time at issue in this action, Ackaway was employed as a mortgage-loan officer for Bank of America. Ackaway participated in Bank of America's short-term-disability (STD) and long-term-disability (LTD) plans. Aetna is the plan administrator for both plans.

Ackaway filed a claim for STD benefits on October 18, 2013. In support of her application, her primary-care physician, Dr. Bernstein, submitted an office-visit note from October 3, 2013, stating that Ackaway had been suffering headaches for the past two or three months. Dr. Bernstein also provided an October 11, 2013 letter from Dr. Sreepada, who noted that Ackaway suffered from headaches that were not of sinonasal etiology and whose symptoms were relieved by various over-the-counter medications. Aetna denied Ackaway's application for STD benefits, concluding that she had not presented sufficient clinical evidence to demonstrate her inability to work. However, Aetna informed Ackaway that this decision could be appealed and that she could submit

2

further medical evidence in support of her appeal.

Ackaway appealed. She also provided an office-visit note from Dr. Safar, who diagnosed her with chronic daily headaches but stated that her condition had been improving. He recommended that she take Topamax. He also reported that she had a "marked limitation of functional capacity/capable of sedentary work," and that she was "unable to engage in stress of interpersonal relationships." ECF No. 37-11 at 62. Aetna then referred Ackaway's claim to Dr. Cohan for independent peer review. Dr. Cohan reviewed Ackaway's medical records and spoke to Drs. Bernstein and Safar over the telephone. On the basis of this information, Dr. Cohan concluded that "[a]lthough the claimant presented with chronic daily headaches of several months' duration, nevertheless, the medical records do not describe those headaches as sufficiently severe or intense as to preclude work." ECF No. 37-11 at 24. On December 27, 2013, in a letter that largely echoed Dr. Cohan's rationale, Aetna upheld its decision denying STD benefits.

On December 18, 2014, Ackaway applied for LTD benefits. She presented additional medical evidence in support of her application. This included an office-visit note from Dr. Safar dated January 16, 2014, in which Dr. Safar observed that Ackaway continued to suffer from chronic daily headaches but provided that she should resume work on January 20, 2014. On January 30, 2014, Dr. Karpinski-Faille reported that the Topamax had been helping Ackaway and that she was "able to get kids out the door

3

now." ECF No. 37-9 at 1. Nevertheless, Dr. Karpinski-Faille completed forms "for 6 weeks more of leave from work." Id. at 3.

In an April 1, 2014 note, Dr. Karpinski-Faille stated that she could "give a few more weeks but if further time off from work needed will need to get from either neurologist or psychiatrist." Id. at 7. On April 11, 2014, Dr. Safar noted that Topamax controlled Ackaway's migraines. Then, in May 2014, Ackaway returned to Dr. Bernstein, who referred her to a migraine specialist, Dr. Mascellino.

In June 2014, Dr. Bernstein reported that Ackaway "notes that she had some improvement [with her headaches], now this seemed to have recurred." ECF No. 37-8 at 43. He also stated that she remained unable to work. Later that month, Ackaway saw Dr. Mascellino. Dr. Mascellino noted that Ackaway had been doing fairly well on Topamax, but her headaches had worsened in March 2014. Dr. Mascellino continued to treat Ackaway, modifying her medication, and in October 2014, reported that her headaches seemed better. Nevertheless, Dr. Mascellino opined that Ackaway still had no ability to work.

On February 26, 2015, Aetna denied Ackaway's application for LTD benefits. Ackaway appealed. Aetna referred the case to Dr. Graham (a neurologist) and Dr. Heydebrand (a psychologist), each of whom, after reviewing the medical records, concluded that Ackaway was not disabled. In support of her appeal, Ackaway also submitted a new diagnosis of multiple sclerosis, although this was not accompanied by a

4

description of the symptoms that it carried or limitations that it caused. Aetna upheld its initial denial, ruling that "there remains a lack of medical evidence to support [Ackaway's] claim for disability from October 21, 2013 through April 20, 2014 (elimination period) and from April 21, 2014 forward." ECF No. 37-5 at 58.

Through counsel, Ackaway filed this action in the District Court. After comprehensively recounting the evidence and discussing the parties' arguments, the District Court, in a well-reasoned opinion, concluded that Aetna had not abused its discretion in denying Ackaway's claims.

Ackaway filed a timely notice of appeal to this Court. The case's progress has been impeded by the withdrawal of Ackaway's counsel, several extensions of time, and the dismissal of the case (later vacated) for Ackaway's failure to file a brief. The parties have also filed several motions concerning their briefs and appendices.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo, applying the same standard as the District Court. See Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011). In the District Court, the parties agreed that, because the plans grant Aetna discretionary authority to determine eligibility for benefits, the Court should review Aetna's decisions for abuse of discretion. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 & n.2 (3d Cir. 2011). Under that standard, we will reject Aetna's determinations only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. at 845.

5

We cannot substitute our own judgment for that of the plan administrator. See Vitale v. Latrobe Area Hosp., 420 F.3d 278, 286 (3d Cir. 2005).[1]

We agree with the District Court that Aetna did not abuse its discretion in denying Ackaway's STD claim. First, Ackaway argues at some length that Aetna could not have fully reviewed her claim because it issued its decision just 24 hours after receiving documents from Dr. Bernstein. However, Dr. Bernstein provided such limited evidence—one office-visit note, one short letter from Dr. Sreepada, and the results of a CT scan and an MRI—that the quick denial of Ackaway's claim does not suggest that the benefits manager did not truly consider it. Moreover, this was just Aetna's initial decision, which Ackaway appealed. As we have explained, "[a] plan administrator's final, post-appeal decision should be the focus of review." Funk v. CIGNA Grp. Ins., 648 F.3d 182, 191 n.11 (3d Cir. 2011).[2]

---

[1] In her brief on appeal, Ackaway alleges that Aetna committed certain procedural errors and that the Court should therefore apply a "heightened" version of the arbitrary-and-capricious standard. We disagree. While alleged procedural irregularities are factors that we consider in deciding whether the administrator abused its discretion, the standard of review remains constant. See Miller, 632 F.3d at 845 n.3.

[2] Likewise, Ackaway complains that Aetna improperly demanded that she provide objective evidence that does not exist for her condition. See, e.g., Br. at 12–13. However, we understand Aetna's first-level decision—which "determined that there is insufficient clinical information to support your inability to perform the essential elements of your occupation," ECF No. 37-13 at 4—to declare that Ackaway had presented so little medical evidence of any sort that she had failed to show that her condition would prevent her from working. Meanwhile, in its appellate decision, Aetna did not fault Ackaway for failing to present objective evidence; rather, Aetna determined that "the medical records do not describe [her] headaches as sufficiently severe or intense

Ackaway also argues that it was inappropriate for Aetna to rely on the opinion of its reviewing physician, Dr. Cohan, rather than her treating physicians. However, "plan administrators are not obliged to defer to the treating physician's opinion." Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)). While it is problematic for an administrator to credit a report from its retained doctor over evidence from treating physicians where the administrator's physician failed to analyze an entire diagnosis, see Miller, 632 F.3d at 854, that did not happen here. Rather, Dr. Cohan discussed Ackaway's condition with Drs. Bernstein and Safar, reviewed the entirety of Ackaway's records, and concluded that Ackaway's condition did not render her unable "to perform [her] essential occupation functions." ECF No. 37-2 at 158. We cannot say that Aetna's reliance on Dr. Cohan's opinion—and its concomitant denial of STD benefits—is "without reason [or] unsupported by substantial evidence." Miller, 632 F.3d at 845; see generally Stratton, 363 F.3d at 258 ("A professional disagreement does not amount to an arbitrary refusal to credit."); Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1279–80 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to the opinions of other experts is an not arbitrary or capricious practice.").[3]

---

to preclude work." ECF No. 37-11 at 8. Ackaway also argues that it was somehow inappropriate to issue two decisions, see Br. at 19, but this was simply an application of the two-level review structure envisioned by the plan. See ECF No. 37-2 at 188.

[3] Ackaway claims that Dr. Cohan misread Dr. Safar's handwriting in determining that she

We reach the same conclusion concerning Ackaway's claim regarding Aetna's denial of LTD benefits. The LTD plan provides that benefits are payable if a claimant remains "disabled" through the "elimination period" of 180 days. See ECF No. 37-3 at 8, 33. Aetna determined that the elimination period ran from October 21, 2013, through April 20, 2014,[4] and that Ackaway did not show that she had been unable to perform the duties of her occupation during that period. That determination was not an abuse of discretion. Multiple experts—including both treating physicians and physicians employed by Aetna—concluded that Topamax had helped bring Ackaway's headaches under control in early 2014 (i.e., during the elimination period). See ECF No. 37-9 at 2 (January 30, 2014 office note from Dr. Karpinski-Faille stating that Ackaway was "[n]egative for . . . headache"); No. 37-8 at 51 (April 11, 2014 office note from Dr. Safar stating that "Topamax 125g controls her migraines"); No. 37-8 at 55 (May 21, 2014 office note from Dr. Jahn reporting that Ackaway has a history of "migraines managed by Topamax").

Ackaway argues that Aetna's analysis fails to account for the side effects caused by Topamax. See Br. at 14–15. Contrary to Ackaway's argument, Aetna specifically explained that she "reported memory loss but the office notes from various providers

---

had not reported any nausea or vomiting. However, we read Dr. Safar's report in the same way that Dr. Cohan did. See ECF No. 37-11 at 63; see also s̄, Stedman's Medical Dictionary (28th ed. 2006) (stating that "s̄" is shorthand for "without").

[4] Ackaway does not dispute this determination.

show no signs of observed memory issues during the office visit." ECF No. 37-5 at 58. This observation is borne out by the record. See, e.g., ECF No. 37-8 at 60 (January 2, 2014 office note from Dr. Karpinski-Faille stating "[p]ertinent negatives include . . . memory loss"); No. 37-9 at 7 (April 1, 2014 office note from Dr. Karpinski-Faille stating "[t]he patient . . . is not having memory loss"); No. 37-7 at 56 (November 16, 2014 office note from Dr. Bernstein stating, "I did do an immediate recall test with three objects which she was able to repeat with rapid-fire without hesitation, I do not feel that there is a neurologic deficit"). Accordingly, we agree with the District Court that, under our deferential standard of review, Aetna did not abuse its discretion in denying LTD benefits.

We will therefore affirm the District Court's judgment.[5]

---

[5] Ackaway's motion for reversal of the order granting Aetna permission to file a supplemental appendix is denied. Her motion to file her reply brief out of time and her motion to file a supplemental appendix are granted.